1  Steven Jay Katzman, State Bar No. 132755
   skatzman@bmkattorneys.com
2  Anne Uyeda, State Bar No. 235306
3  auyeda@bmkattorneys.com
   BIENERT, MILLER & KATZMAN, PLC
4  903 Calle Amanecer, Suite 350
5  San Clemente, California 92673
   Telephone (949) 369-3700/Facsimile (949) 369-3701
6
7  Bruce E. Reinhart (*pro hac vice* pending)
   Breinhart@mcdonaldhopkins.com
8  MCDONALD HOPKINS LLC
9  505 S. Flagler Drive, Suite 300
   West Palm Beach, Florida 33401
10 Telephone: (561) 472-2970/Facsimile: (561) 472-2122
11
   David B. Cupar (*pro hac vice* pending)
12 dcupar@mcdonaldhopkins.com
13 Matthew J. Cavanagh (*pro hac vice* pending)
   mcavanagh@mcdonaldhopkins.com
14 MCDONALD HOPKINS LLC
15 600 Superior Ave., East, Ste. 2100
   Cleveland, Ohio 44114
16 Telephone: (216) 348-5400/Facsimile: (216) 348-5474
17 Attorneys for Plaintiff
   SPECTRUM LABORATORIES, LLC,
18

19                    **UNITED STATES DISTRICT COURT**

20                    **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 21  SPECTRUM LABORATORIES, LLC | Case No. SACV13-1001 JVS (RNBx) |
| 22     Plaintiff | **PLAINTIFF SPECTRUM LABORATORIES, LLC'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES** |
| 23 | |
| 24  v. | |
| 25  LAHAR MFG, INC., d/b/a/ SYNTHETIX5 and DOES 1-5 inclusive, | |
| 26 | |
| 27     Defendants | [Declaration of James Matthew Stephens and [Proposed] Order filed concurrently herewith] |
| 28 | |

1

Date: August 12, 2013
Time: 1:30 p.m
Place: Courtroom 10C
Ronald Reagan Federal Bldg.
and United States Courthouse
411 West Fourth Street
Santa Ana, California
Judge   Honorable James V. Selna

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 12, 2013, at 1:30 p.m., in the courtroom of the Honorable James V. Selna, located at 411 West Fourth Street, Santa Ana, California, 92701, Plaintiff Spectrum Laboratories, LLC ("Spectrum") will move the Court under Federal Rule of Civil Procedure 65 to enter an order preliminarily enjoining Defendant Lahar Mfg., Inc., dba Synthetix5, ("Synthetix5") from continuing to counterfeit Spectrum's popular "Quick Fix" and "Quick Fix Plus" synthetic urine products (collectively, the "Quick Fix Products").

For years, Spectrum has worked to build a strong reputation and goodwill with its customers. Accordingly, it has built up strong trademark rights to its distinctive and now well known terms SPECTRUM LABS, URN LUCK, and QUICK FIX (collectively, the "Spectrum Marks"). Those marks all appear on boxes of Spectrum's Quick Fix Products, so that customers use those marks to identify Spectrum—a company they have learned to trust—as the source of those products.

There can be no doubt that Synthetix5 is selling counterfeits of the Quick Fix Products. The Declaration of Spectrum's James Matthew Stephens, filed concurrently herewith, confirms that Synthetix5 sold products that appear in all respects to be real Spectrum Quick Fix Plus but that, in reality, were fakes. The counterfeit products sold by Synthetix5 are inferior to Spectrum's genuine products, and are not an effective substitute for human urine. Accordingly, the counterfeits are irreparably harming Spectrum's reputation and goodwill, destroying the trust of its customers, and drastically diminishing Spectrum's sales (which likely will cause Spectrum a permanent loss of market share).

As the attached memorandum and supporting documents confirm, all of the injunction factors weigh heavily in favor of granting a preliminary injunction to end Synthetix5's counterfeiting and the resulting irreparable harm to Spectrum. Thus, the Court should enter an order preliminarily enjoining Synthetix5, and all of its officers, agents, servants, employees, successors, representatives, assigns, attorneys, and others in active concert or participation with them, collectively and individually, from:

1. Manufacturing, advertising, distributing, marketing, importing, promoting, offering for sale, or selling any counterfeit version of Spectrum's "Quick Fix" or "Quick Fix Plus" products.

2. Selling, offering to sell, distributing, or otherwise providing anything other than a genuine Spectrum in response to, or in fulfillment of, any request for "Quick Fix" or "Quick Fix Plus."

3. Describing a product as "Quick Fix" or "Quick Fix Plus," or as a "Spectrum" product, when the product does not actually originate from Spectrum.

4. Using the Spectrum Marks, or any designation that incorporates or is confusingly similar to any of those marks in connection with the sale of any goods or services.

5. Engaging in any activity that infringes any of Spectrum's rights to the Spectrum Marks or otherwise unfairly competing with Spectrum in any way.

As detailed in the proposed order, which Spectrum is providing for the Court's convenience, the Court also should order that Synthetix5, and all those assisting or acting in concert with Synthetix5, recall all of the Spectrum Quick Fix products that they have sold, deliver all Quick Fix (whether in inventory or recalled) to Spectrum for inspection, and provide a detailed accounting of Quick Fix sales and identify Synthetix5's Quick Fix suppliers (so Spectrum can trace down any additional counterfeits in the stream of commerce).

The Motion for Preliminary Injunction ("Motion") is filed in accordance with Rule 7 of the Local Rules of the United States District Court for the Central District of

California ("Local Rules"). Pursuant to Local Rule 7-3, because the Motion requests a preliminary injunction, it is exempted from the requirement that the parties first participate in a conference of counsel prior to the filing of this Motion.

The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities attached hereto, the Declaration of James Matthew Stephens filed concurrently herewith, all further pleadings that will be filed by Spectrum herein, the record on file in this matter, and such further evidence and argument as the Court may permit or require at or prior to the time of the hearing on this Motion.

Dated: July 12, 2013                    BIENERT, MILLER & KATZMAN, PLC


                                        By: /s/ Steven Jay Katzman /s/
                                            Steven Jay Katzman
                                            Anne A. Uyeda
                                            Attorneys for Plaintiff
                                            SPECTRUM LABORATORIES, LLC

                                            MCDONALD HOPKINS LLC
                                            Bruce E. Reinhart
                                            David B. Cupar
                                            Matthew J. Cavanagh
                                            Attorneys for Plaintiff
                                            SPECTRUM LABORATORIES, LLC

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ................................................................................................1

II. FACTUAL BACKGROUND...............................................................................1

    A. Spectrum's Trademark Rights...................................................................1

    B. Synthetix5's Counterfeiting ......................................................................3

III. LAW AND ARGUMENT....................................................................................4

    A. Synthetix5's Counterfeiting Should Be Preliminarily Enjoined...............4

    B. Spectrum Will Likely Prevail On The Merits..........................................5

        1. Spectrum Owns Valid Marks.........................................................5

        2. Synthetix5's Counterfeiting Is Likely To Confuse Customers ............7

            a. The Spectrum Trademarks Are Strong........................................7

            b. The Goods Are Identical..............................................................8

            c. The Marks Appear Identical ........................................................8

            d. Actual Confusion Exists ..............................................................8

            e. Same Marketing Channels Used .................................................8

            f. Purchasers' Low Degree of Care..................................................8

            g. Synthetix5's Bad Intent ................................................................8

            h. Likelihood of Expansion .............................................................8

    C. Synthetix5's Counterfeiting Is Causing Irreparable Harm .......................9

    D. The Balance Of Equities Favors Injunctive Relief .................................10

    E. The Balance Of Equities Favors Injunctive Relief .................................10

IV. CONCLUSION...................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir.1979) ................................................. 7

*Applied Info. Sci. Corp. v. eBay, Inc.*, 511 F.3d 966 (9th Cir. 2007) ................................. 5

*Boldface Licensing %8F Branding v. By Lee Tillett, Inc.*, --- F. Supp. 2d ----,
    No. CV 12-10269, 2013 WL 1685464 (C.D. Cal. Mar. 11, 2013) .............................. 10

*CrossFit, Inc. v. Maximum Human Perform., LLC*, No. 12cv2348, 2013 WL
    1627953 (S.D. Cal. Apr. 12, 2013) .........................................................................9-10

*CytoSport, Inc. v. Vital Pharma., Inc.*, 617 F. Supp. 2d 1051 (E.D. Cal.2009) .................. 9

*Ferrari S.P.A. v. Roberts*, 944 F2d 1235 (6th Cir. 1991) .................................................6-7

*Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100
    (6th Cir. 1991) .............................................................................................................. 8

*Internet Specialties West, Inc. v. Milon-Digiorgio Enters.*, 559 F.3d 985
    (9th Cir.2009) ............................................................................................................... 5

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873
    (9th Cir. 2009) ........................................................................................................... 5, 9

*Martin v. Int'l Olympic Comm.*, 740 F.2d 670 (9th Cir. 1984) ........................................... 4

*McDonald's Corp. v. Robertson*, 147 F.3d 1301 (11th Cir. 1998) ..................................... 4

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254 (2d Cir. 1987) ...................... 7

*Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271
    (C.D. Cal. 2008) ...................................................................................................... 4, 10

*Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145 (4th Cir. 1987) .................................... 7

*Protectmarriage.com v. Courage Campaign*, 680 F. Supp. 2d 1225
    (E.D. Cal. 2010) ....................................................................................................... 5, 9

*Stanley v. University of So. Cal.*, 13 F.3d 1313 (9th Cir. 1994) ......................................... 4

*Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862
    (7th Cir. 1983) .............................................................................................................. 9

**TABLE OF AUTHORITIES: (continued)**          **Page(s)**

*Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108 (9th Cir. 2010) .................... 6, 7

**Statutes**

15 U.S.C. § 1114 ............................................................................................................... 5

15 U.S.C. § 1115 ............................................................................................................... 5

15 U.S.C. § 1125 ............................................................................................................... 5

# MEMORANDUM OF POINTS AND AUTHORITIES

Spectrum Laboratories, LLC respectfully submits this memorandum in support of its motion for preliminary injunction against Lahar Mfg, Inc., dba Synthetix5 ("Synthetix5").

## I. INTRODUCTION

Spectrum sells popular synthetic urine products called "Quick Fix." To make a quick buck, Synthetix5 is selling counterfeit versions of Spectrum's Quick Fix Plus product. The counterfeits are inferior to Spectrum's genuine product and, accordingly, the counterfeiting is irreparably damaging Spectrum's goodwill and reputation and causing Spectrum to lose significant sales. Because there can be no doubt that customers are likely to be confused by counterfeits of Spectrum's Quick Fix Plus product, Spectrum has more than established a likelihood of success on the merits and shown ongoing irreparable harm. Thus, the Court should enter a preliminary injunction to protect Spectrum and to protect purchasers in this market from being fooled to their detriment.

## II. FACTUAL BACKGROUND

### A. Spectrum's Trademark Rights

For over a decade, Spectrum has marketed and sold popular synthetic urine products called "Quick Fix" and "Quick Fix Plus" (collectively, the "Quick Fix Products"). (Stephens Decl. ¶ 5, 6.)[1] Spectrum has used various trademarks to identify itself as the source of its Quick Fix Products, including (without limitation) the URN LUCK mark, SPECTRUM LABS mark, and QUICK FIX mark (collectively, the "Spectrum Marks"). (*Id.* ¶ 7.) Spectrum markets and sells its Quick Fix Products in distinctive rectangular boxes that employ a distinctive trade dress, as shown:

///

///

///

---

[1] The Declaration of Spectrum's James Matthew Stephens ("Stephens Decl.") is filed concurrently herewith.



(*Id.* ¶ 8.) Since at least 2001, Spectrum has labeled Quick Fix Products' packaging with each of the Spectrum Marks to identify Spectrum as the source of the product:

  

(*Id.* ¶ 9.)

By virtue of its longtime and exclusive commercial use of the Spectrum Marks, Spectrum has acquired the exclusive common law trademark rights to those marks. (Stephens Decl. ¶ 5, 13.) In addition to its common law rights, Spectrum also has a federal trademark registration to the URN LUCK mark, Registration No. 3,334,957. (*Id.* ¶ 11.)

Spectrum has invested significant amounts of time and money to promote the sale of Quick Fix products in connection with the Spectrum Marks. (Stephens Decl. ¶ 12.) And Spectrum has sold millions of dollars worth of Quick Fix products, so that the Spectrum Marks are now well established and customers immediately associate those marks with Spectrum's reliable and high-quality products. (*Id.* ¶ 13.)

///

///

### B. Synthetix5's Counterfeiting

Spectrum learned that Synthetix5 sold counterfeit Quick Fix Plus products to a retail store in Minnesota. (Stephens Decl. ¶ 14-16.) The retail store provided samples of the counterfeit units to Spectrum for analysis. (*Id.* ¶ 15.)

The photograph below shows the counterfeit product on the left and genuine Quick Fix Plus on the right:



(Stephens Decl. ¶ 17.) As shown, both the counterfeit product and genuine Quick Fix Plus include a heat pad in a red package with the SPECTRUM LABS mark on it, a plastic bottle filled with yellowish liquid, and an instructions pamphlet. (*Id.* ¶ 18-19.) The two "Quick Fix Plus" boxes look almost identical and the two instructions pamphlets have language that is substantively the same. (*Id.* ¶ 17-19.)

But Spectrum's analysis confirms that, upon close side-by-side examination, the ink on the counterfeit box is slightly lighter than genuine Quick Fix Plus and the texture of the counterfeit box is different. (Stephens Decl. ¶ 20.) The counterfeit products also lack an anti-counterfeiting feature of Spectrum Quick Fix Plus. (*Id.* ¶ 21.) And the counterfeit product's heat pack is a slightly different size and color than Spectrum's genuine product. (*See id.* ¶ 17.) Spectrum's testing also found that the counterfeit's synthetic urine composition is different from, and inferior to, genuine Spectrum Quick Fix Plus. (*Id.* ¶

22.) The Synthetix5 invoice, attached to the declaration of Mr. Stephens, confirms that it is the source of these counterfeit products. (*Id.* ¶ 24.)

As a result of the counterfeiting, Spectrum's Quick Fix and Quick Fix Plus sales have declined dramatically. Since March 2013, sales have dropped 28%. (Stephens Decl. ¶ 25.) Make matters worse, because the counterfeit synthetic urine's formula is inferior to Spectrum's true formula, the counterfeit product is not a safe or effective substitute for Quick Fix Plus. (*Id.* ¶ 22.) Thus, not only is Spectrum losing sales, but Synthetix5's counterfeiting is causing irreparable harm to Spectrum's reputation and goodwill as disappointed customers will attribute the defective counterfeit product to Spectrum. (*Id.* ¶ 26-30.) Injunctive relief is needed to put an end to the deception and the resulting irreparable harm to Spectrum.

## III. LAW AND ARGUMENT

### A. Synthetix5's Counterfeiting Should Be Preliminarily Enjoined

Preliminary injunctive relief is available to a party who demonstrates: (i) a substantial likelihood that the moving party will prevail on the merits; (ii) the moving party will suffer irreparable injury unless the injunction is issued; (iii) the threatened injury to the moving party outweighs any damage to the defendants; and (iv) the injunction is in the public interest. *Stanley v. University of So. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994). In the alternative, a court may order injunctive relief if the moving party demonstrates "either a combination of probable success on the merits and the possibility of irreparable injury or those serious questions are raised and the balance of hardships tips sharply in his favor." *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984).

Because trademark infringement causes immediate and irreparable harm to the plaintiff's goodwill and reputation, "trademark actions 'are common venues for the issuance of preliminary injunctions.'" *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) (affirming preliminary injunction for trademark owner); *see, e.g.*, *Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008) (granting preliminary injunction in trademark case). A California district court has

explained why, in trademark cases, injunctions normally issue when plaintiff has a likelihood of success:

> In the trademark context, however, the likelihood of success on the merits largely determines the remaining factors. The Ninth Circuit has held that in trademark cases, "irreparable injury may be presumed from a showing of likelihood of success on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir.2009) (quotations omitted). This presumption in turn influences the balancing of hardships. *Id.* Finally, "avoiding confusion to consumers," the goal of trademark protection, is itself a public interest that is often demonstrated by likelihood of success. *Internet Specialties West, Inc. v. Milon-Digiorgio Enters.*, 559 F.3d 985, 993 (9th Cir.2009).

*Protectmarriage.com v. Courage Campaign*, 680 F. Supp. 2d 1225, 1228 (E.D. Cal. 2010). Here, all four injunctions factor weigh in favor of injunctive relief.

### B. Spectrum Will Likely Prevail On The Merits

Spectrum seeks a preliminary injunction on its claims for: (i) infringement of its registered URN LUCK trademark under 15 U.S.C. § 1114(a); and (ii) infringement of its unregistered SPECTRUM LABS and QUICK FIX PLUS marks under 15 U.S.C. § 1125(a)(1). Spectrum prevails on either claim by showing: (i) it has valid trademark rights; and (ii) Synthetix's use of the same or similar mark is likely to cause confusion. *Applied Info. Sci. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007).

#### 1. Spectrum Owns Valid Marks

By statute, Spectrum's ownership of a federal registration for the URN LUCK Mark is prima facie evidence that the mark is valid and enforceable. *See Applied Info.*, 511 F.3d at 970; *see also* 15 U.S.C. § 1115(a) ("registration . . . shall be prima facie evidence of the validity of the registered mark . . . ownership of the mark, and of the registrant's exclusive right to use the registered mark").

///

The unregistered SPECTRUM LABS and QUICK FIX marks are valid and enforceable because they are "distinctive." *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010). Marks are generally classified in one of five categories of distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Id.* "Suggestive, arbitrary, and fanciful marks are considered 'inherently distinctive' and are automatically entitled to federal trademark protection, without the need for registration, because 'their intrinsic nature serves to identify a particular source of a product.'" *Id*. Generic marks are never entitled to trademark protection. Unregistered descriptive marks are valid when they have acquired "secondary meaning," that is, "acquired distinctiveness 'as used on or in connection with the [trademark owner's] goods in commerce.' " *Id*.

The unregistered SPECTRUM LABS and QUICK FIX marks (collectively, the "QUICK FIX Marks") are valid because they are inherently distinctive and, separately, they have acquired distinctiveness, so that they are valid under either distinctiveness standard. First, both marks are either suggestive or arbitrary – and, therefore, inherently distinct – because neither term describes the qualities or characteristics of synthetic urine products marketed under those trademarks. *See Zobmondo*, 602 F.3d at 1114 (explaining differences between descriptive and suggestive marks).

Alternatively, the QUICK FIX Marks have acquired distinctiveness (or secondary meaning) by virtue of Spectrum's longtime exclusive use of the marks, the number of customers that have bought Spectrum products bearing the QUICK FIX Marks, the amount of revenue that Spectrum has earned from sales of products bearing the QUICK FIX Marks, and the amount of money Spectrum has spent for advertisement efforts that incorporate the QUICK FIX Marks. (*See* Stephens Decl. ¶ 5-13.) Synthetix5's copying of the QUICK FIX Marks further proves they have secondary meaning because there would have been no reason to copy Spectrum's trademark-adorned box if not to capitalize on customer's recognition of those marks. *See Ferrari S.P.A. v. Roberts*, 944 F2d 1235, 1239

///

(6th Cir. 1991) ("[T]here is no reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence.").

Spectrum, therefore, is likely to succeed in proving at trail that it owns one or more valid trademarks.

### 2. Synthetix5's Counterfeiting Is Likely To Confuse Customers

Spectrum also is likely to prevail in showing that Synthetix5's counterfeit product is likely to confuse customers. "Where . . . one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of likelihood of confusion." *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987); *accord Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987) ("Intentional copying gives rise to a presumption of a likelihood of confusion."). That common sense presumption alone establishes Spectrum's likelihood of success on the merits. Thus, the Court need not consider the *Sleekcraft* factors, which are normally used to determine whether likelihood of confusion exists.

Nonetheless, each of those factors weighs in favor of confusion, further confirming that Spectrum has a likelihood of prevailing on its trademark claims. The *Sleekcraft* factors are: (1) strength of the mark, (2) proximity or relatedness of the goods, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) degree of care customers are likely to exercise in purchasing the goods, (7) defendant's intent in selecting the mark, and (8) likelihood of expansion into other markets. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir.1979).

#### a. The Spectrum Trademarks Are Strong

Based on its registration, the URN LUCK mark is presumed to be suggestive or better. *See Zobmondo*, 602 F.3d at 1113-14 ("Where the PTO issues a registration without requiring proof of secondary meaning, the presumption is that the mark is inherently distinctive."). And, as explained above, the SPECTRUM and QUICK FIX PLUS marks are each suggestive or arbitrary. Because each mark is suggestive or better, the marks have strength that favors a likelihood of confusion.

### b. The Goods Are Identical

Because the counterfeited marks and the true Spectrum marks are used on the same synthetic urine product, this factor weighs strongly in favor of confusion.

### c. The Marks Appear Identical

This factor weights strongly in favor of confusion because the counterfeit marks appear, and are intended by the counterfeiter to appear, identical to Spectrum's marks.

### d. Actual Confusion Exists

At least one customer, the Minnesota retailer, has purchased the counterfeit products based on its mistaken belief that it was purchasing genuine Spectrum product. That actual confusion evidence means more confusion is likely to occur.

### e. Same Marketing Channels Used

The parties here market predominately to the very same customers, namely retailers. This factor therefore favors a finding that confusion is likely.

### f. Purchasers' Low Degree of Care

Because Quick Fix sells for only $20 per unit, customers are unlikely to use a high degree of care when confronted with packaging that appears identical to genuine Spectrum Quick Fix Plus. That lower degree of care favors a likelihood of confusion.

### g. Synthetix5's Bad Intent

"If a party chooses a mark with the intent of causing confusion, that fact alone may be sufficient to justify an inference of confusing similarity." *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1105 (6th Cir. 1991). Here, there can be no doubt that Synthetix5 had bad intent to cause confusion; the only reason to counterfeit Spectrum's product is to confuse buyers into thinking it is genuine Spectrum product. That bad intent heavily favors a finding that confusion is likely.

### h. Likelihood of Expansion

Because the parties now sell identical products under the same trademarks, any future expansions of products or services likely will be the same for both parties. Consequently, this factor weights in favor of a finding of likelihood of confusion.

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

Thus, Spectrum has shown it is more than likely to prevail on the merits of its trademark case.

### C. Synthetix5's Counterfeiting Is Causing Irreparable Harm

Trademark infringement always causes irreparable harm to the trademark owner because it loses control of the goodwill associated with its mark as confused customers mistakenly attribute the quality and nature of the infringer's goods and services to the trademark owner. *See Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir. 1983). Accordingly, when the trademark owner establishes a likelihood of success on the merits, irreparable harm is presumed. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009); *Protectmarriage.com v. Courage Campaign*, 680 F. Supp. 2d 1225, 1228 (E.D. Cal. 2010).

Separate from that presumption, Spectrum has shown that Synthetix5's counterfeiting threatens irreparable harm. Spectrum has spent over a decade building a strong reputation and earning the trust of its customers. (Stephens Decl. ¶ 9, 12-13, 26-28.) Customers buy Spectrum's Quick Fix Products because they know that it is a quality substitute for human urine. (*See id.* ¶ 27-28.) Synthetix5's counterfeit products are inferior for they do not mimic human urine as closely as Spectrum's products. (*Id.* ¶ 22.) Accordingly, when deceived customers are disappointed by the counterfeit product, they will incorrectly attribute its defective nature to Spectrum and may never trust Spectrum again. (*Id.* ¶ 29-30.) Thus, the counterfeiting is irreparably harming Spectrum's reputation, goodwill, and client trust. (*Id.* ¶ 26-30.) Moreover, the counterfeiting is causing Spectrum's sales to decline at an astronomical rate, resulting in market share loss that it may never recapture. (*Id.* ¶ 25.) That likely permanent loss of sales, customers, market share, reputation, goodwill, and client trust—all of which threaten to destroy Spectrum's business—constitute irreparable harm. *See CytoSport, Inc. v. Vital Pharma., Inc.*, 617 F. Supp. 2d 1051, 1080-81 (E.D. Cal.2009) (loss of control of reputation and goodwill constitutes irreparable harm); *CrossFit, Inc. v. Maximum Human Perform., LLC*,

No. 12cv2348, 2013 WL 1627953, at * 4 (S.D. Cal. Apr. 12, 2013) (same); *Boldface Licensing %8F Branding v. By Lee Tillett, Inc.*, --- F. Supp. 2d ----, No. CV 12-10269, 2013 WL 1685464, at *16 (C.D. Cal. Mar. 11, 2013) (granting preliminary injunction where potential loss of "business opportunities, customers, and goodwill" threatened irreparable harm).

### D. The Balance Of Equities Favors Injunctive Relief

The equities favor Spectrum because Synthetix5 is willfully counterfeiting Spectrum's Quick Fix Plus. *See Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1281-82 (C.D. Cal. 2008) (finding equities favor an injunction where "Defendants brought the injury upon themselves by intentionally adopting deceptively similar trademarks and packaging"). Moreover, without an injunction, Spectrum could permanently lose customers and market share and, even worse, could lose its entire business. Thus, the equities heavily favor Spectrum and the injunctive relief it seeks.

### E. The Balance Of Equities Favors Injunctive Relief

Lastly, an injunction would serve the public interest by preventing marketplace confusion. *Boldface Licensing*, 2013 WL 1685464, at * 16 ("the paramount interest here is avoiding confusion among consumers"); *Moroccanoil*, 590 F. Supp. 2d at 1282 ("As the public has a right not to be deceived or confused, the public interest and goals of the Lanham Act favor an injunction in this case.").

///
///
///
///
///
///
///
///
///

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Spectrum's motion and enter a preliminary injunction as requested in Spectrum's motion.

Dated: July 12, 2013          BIENERT, MILLER & KATZMAN, PLC


By: */s/ Steven Jay Katzman /s/*
    Steven Jay Katzman
    Anne A. Uyeda
    Attorneys for Plaintiff
    SPECTRUM LABORATORIES, LLC

    MCDONALD HOPKINS LLC
    Bruce E. Reinhart
    David B. Cupar
    Matthew J. Cavanagh
    Attorneys for Plaintiff
    SPECTRUM LABORATORIES, LLC

# CERTIFICATE OF SERVICE

I, Coleen Grogan, declare,

That I am a citizen of the United States and am a resident or employed in Orange County, California; that my business address is 903 Calle Amanecer, Suite 350, San Clemente, California 92673; that I am over the age of 18 and not a party to the above-entitled action.

That I am employed by a member of the United States District Court for the Central District of California and at whose direction I caused service of: PLAINTIFF SPECTRUM LABORATORIES, LLC'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; and declaration of JAMES MATTHEW STEPHENS IN SUPPORT THEREOF on the interested parties as follows:

**X** **BY U.S. MAIL** I am "readily familiar" with Bienert, Miller & Katzman, PLC's practice for collecting and processing mail with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. As such, I caused to be mailed the foregoing document(s) to the following non-ECF participants in this case:

Michael Eric Tandberg
President Lahar Mfg, Inc.
4533 MacArthur Boulevard, #219
Newport Beach, California 92660

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

This certificate was executed on July 12, 2013 at San Clemente, California.

*/s/ Coleen Grogan /s*
Coleen Grogan