UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 13-01001-JVS (RNBx) | Date | December 13, 2013 |
| Title | Spectrum Laboratories LLC v. Lahar Mfg Inc et al | | |

Present: The Honorable    James V. Selna

| Denise Vo | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:     Attorneys Present for Defendants:

Not Present                            Not Present

**Proceedings:**   (IN CHAMBERS) Order Denying Plaintiff's Motion for Preliminary Injunction

This matter is before the Court on the renewed[1] Motion of Plaintiff Spectrum Laboratories, LLC ("Spectrum") for a Preliminary Injunction. (Docket No. 20.) Spectrum seeks a preliminary injunction prohibiting Defendant J.T. Saniya, Inc.,[2] ("Saniya") from selling counterfeit versions of Spectrum's products and from otherwise infringing upon Spectrum's registered and unregistered trademarks. No timely opposition to the present Motion has been filed. Because Spectrum has failed to present evidence establishing it has suffered irreparable harm, the Court denies the present Motion for Preliminary Injunction.

I.   Factual Background

The facts supporting the present Motion for Preliminary Injunction are simple. Spectrum sells synthetic urine products called "Quick Fix" and "Quick Fix Plus." (Stephens Decl. ¶¶ 5-6.) Spectrum has also used the marks "URN Luck" and "Spectrum Labs" on its products. (Id. ¶ 7.)

Spectrum has recently been alerted that Defendant Synthetix5 sold an apparently

---

[1] (See Docket Nos. 7 (original Motion for Preliminary Injunction) & 18 (notice of withdrawal of Motion for Preliminary Injunction).)

[2] An injunction is not sought against Defendant Lahar Mfg, Inc. d/b/a Synthetix5 ("Synthetix5"), whose owner has submitted a declaration in support of the present Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 13-01001-JVS (RNBx) | Date | December 13, 2013 |
| Title | Spectrum Laboratories LLC v. Lahar Mfg Inc et al | | |

identical product in packaging that is indistinguishable from its own packaging. (Id. ¶¶ 14-15.) Synthetix5 obtained the product from Saniya. (Id. ¶¶ 24-25.) An examination of the photographs of the product identified as the authentic Spectrum product and the product obtained from Saniya reveals that the latter product is meant to be mistaken for Spectrum's product. (Id. at ¶¶ 16-17 (identifying items in photograph).) Simply put, it is clear from that comparison that Saniya's product is a counterfeit version of Spectrum's product.

Since March 2013, Spectrum's products have experienced a 28% decline in sales. (Id. ¶ 28.)

II.   Preliminary Injunctions in Trademark Infringement Cases

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008). The Ninth Circuit has "also articulated an alternate formulation of the Winter test, under which 'serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.'" Farris v. Seabrook, 677 F.3d 858, 864 (9th Cir. 2012) (quoting Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011)).

To establish a likelihood of success on a trademark claim, the plaintiff must establish that he is "(1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark." Grocery Outlet, Inc. v. Albertson's, Inc., 497 F.3d 949, 951 (9th Cir. 2007). In the Ninth Circuit, whether a mark is confusingly similar is determined with reference to the eight non-exhaustive factors articulated in AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979): (1) The similarity of the marks; (2) the strength of the plaintiff's mark; (3) the proximity or relatedness of the goods or services; (4) the defendant's intent in selecting the mark; (5) evidence of actual confusion; (6) the marketing channels used; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers of the defendant's product.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 13-01001-JVS (RNBx) | Date | December 13, 2013 |
| Title | Spectrum Laboratories LLC v. Lahar Mfg Inc et al | | |

III.   Discussion

    A.   Likelihood of Success

        1.   Validity and Protectability of Spectrum's Marks

     Here, Spectrum has registered and unregistered marks. Spectrum's registered mark is entitled to a presumption of validity. See Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d 1108, 1113 (9th Cir. 2010).

     In contrast to the presumed validity of the registered marks, the validity and protectability of Spectrum's unregistered marks ("Quick Fix," "Quick Fix Plus," and "Spectrum Labs") depends upon whether they are inherently distinctive, and if not, whether those marks have nevertheless acquired secondary meaning that warrants trademark protection.

     Specifically, trademarks "are generally classified in one of five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful." Id. (internal quotation marks and citation omitted). Suggestive, arbitrary, and fanciful marks are considered "inherently distinctive" and are automatically entitled to federal trademark protection because "their intrinsic nature serves to identify a particular source of a product." Id. at 1113 (internal quotation marks and citation omitted).

     "Merely descriptive marks . . . can become protectable if [they have] acquired distinctiveness 'as used on or in connection with the applicant's goods in commerce,'" a type of acquired distinctiveness referred to as "secondary meaning." Id. (quoting 15 U.S.C. § 1052(f)). "The line between descriptive and suggestive marks in nearly incapable of precise description." Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1033 (9th Cir. 2010). However, generally, suggestive marks merely suggest a product's feature, but "[d]escriptive terms directly describe the quality or features of the product." Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1058 n.19 (9th Cir.1999); Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 632 (9th Cir. 2005).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 13-01001-JVS (RNBx) | Date | December 13, 2013 |
| Title | Spectrum Laboratories LLC v. Lahar Mfg Inc et al | | |

Here, even absent evidence of secondary meaning,[3] Spectrum's unregistered marks are entitled to protection because they are at least suggestive. At most, the "Quick Fix" and "Quick Fix Plus" marks merely suggest the product's purpose. Spectrum Labs doesn't describe anything about the product; rather, it describes the company that makes the product. Thus, Spectrum's unregistered marks are protectable.

        2.      <u>Consumer Confusion</u>

Most of the <u>Sleekcraft</u> factors strongly favor a finding of consumer confusion.

Spectrum has presented evidence that the marks have long been used in commerce to identify its product; thus, the second factor, the strength of the mark, supports a finding of confusion. (Stephens Decl. ¶¶ 5-7.)

The marks at issue here have been used on a counterfeit product, that is, a product intended by its maker to appear as identical to the authentic product so that it may be sold to retailers and consumers who believe it to be the authentic product. In such a situation, the first, third, fourth, and fifth <u>Sleekcraft</u> factors weigh in favor of a finding of confusion. Specifically, the first and third factors, related to the similarity of the goods, favor such a finding because the goods are identical. The fourth factor is met because the defendant clearly intended to cause confusion by using the marks. Moreover, regarding the fifth factor, requiring evidence of actual confusion, where, as here, the counterfeited product is a good imitation of the original, it may fairly be inferred that consumers have been actually confused. In any event, Spectrum has presented evidence of actual confusion. Specifically, Spectrum has presented evidence that at least one retailer mistakenly purchased the counterfeit product on the assumption that it was the authentic product. (Stephens Decl. ¶¶ 14-18 & Ex. 2.)

The eighth factor, the degree of care in selecting the product, also weighs in favor of a finding of confusion. The product is low cost product, and the counterfeited version appears identical to the original. Thus, consumers are unlikely to devote a great deal of

---

[3] Such evidence is not absent here, and the marks at issue would be protectable even if they were found to be merely descriptive because they have acquired secondary meaning. (<u>See</u> Stephens Decl. ¶¶ 5-7.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 13-01001-JVS (RNBx) | Date | December 13, 2013 |
| Title | Spectrum Laboratories LLC v. Lahar Mfg Inc et al | | |

time to the selection of this product, and even if they did, they are highly unlikely to discern any differences between the counterfeit and the original.

Accordingly, because Spectrum has valid, protectable marks, and because most of the Sleekcraft factors[4] strongly favor a finding of consumer confusion, the Court finds Spectrum has established a likelihood of success on the merits of its trademark infringement claims.

      B.    Irreparable Harm

A plaintiff establishes a likelihood of irreparable harm when it establishes that it is unlikely to be made whole by an award of monetary damages or some other legal remedy at a later date, in the ordinary course of litigation. See California Pharmacists Ass'n v. Maxwell-Jolly, 563 F.3d 847, 851-52 (9th Cir. 2009). Lost sales, even if difficult to estimate, are in the nature of monetary damages and do not themselves support a finding of irreparable harm. Reebok Int'l Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1558 (Fed. Cir. 1994); Aurora World, Inc. v. Ty Inc., 719 F.Supp.2d 1115, 1169 (C.D.Cal.2009); Mirina Corp. v. Marina Biotech, 770 F. Supp. 2d 1153, 1162 (W.D. Wash. 2011).

In contrast, a loss of market share or a permanent loss of customers as a result of an infringing product can support a finding of irreparable harm. Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 841 (9th Cir. 2001); Apple, Inc. v. Samsung Electronics Co., Ltd., 909 F. Supp. 2d 1147, 1152 (N.D. Cal. 2012). Similarly, the loss of good will or the loss of the ability to control one's reputation may constitute irreparable harm for purposes of preliminary injunctive relief. SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd., 846 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012); Stark v. Diageo Chateau & Estate Wines Co., 907 F. Supp. 2d 1042, 1066 (N.D. Cal. 2012); Seed Servs., Inc. v. Winsor Grain, Inc., 868 F. Supp. 2d 998, 1005 (E.D. Cal. 2012); Mirina Corp. v. Marina Biotech, 770 F. Supp. 2d 1153, 1162 (W.D. Wash. 2011).

The moving party bears the burden of establishing the likelihood of irreparable harm. Spectrum argues that where a trademark holder establishes a likelihood of success

---

[4] Spectrum presented no evidence on the sixth and seventh factors. However, even in the absence of similar marketing channels or the likelihood of expansion into other markets, the use of Spectrum's marks on counterfeit products support a finding of confusion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 13-01001-JVS (RNBx) | Date | December 13, 2013 |
| Title | Spectrum Laboratories LLC v. Lahar Mfg Inc et al | | |

on the merits, it is also entitled to a presumption of irreparable harm. (Motion at 9.)[5] Recent case law has cast serious doubt upon this long-held proposition and, as explained below, the Court finds itself in agreement with those cases that hold such a presumption can no longer be made.

Although the Ninth Circuit is yet to expressly hold that the presumption has been eliminated in trademark cases, it has expressly eliminated the presumption in copyright and patent cases. Flexible Lifeline Sys., 654 F.3d at 996. Specifically, after discussing the recent Supreme Court cases of eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006) and Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008), the Ninth Circuit definitively stated: "Thus, under eBay, a presumption of irreparable harm is equally improper in a case based on copyright infringement as it is in a case based on patent infringement." Flexible Lifeline, 654 F.3d at 996. This Court agrees with the many district court opinions within the Ninth Circuit that have held that a plaintiff is no longer entitled to such a presumption in trademark cases. See, e.g., Rovio Entm't Ltd. v. Royal Plush Toys, Inc., 907 F. Supp. 2d 1086, 1093 (N.D. Cal. 2012); BoomerangIt, Inc. v. ID Armor, Inc., 2012 WL 2368466, at *4 (N.D.June 21, Cal.2012) (citing cases); Seed Servs., Inc. v. Winsor Grain, Inc., 868 F. Supp. 2d 998, 1004-05 (E.D. Cal. 2012); Groupion, LLC v. Groupon, Inc., 826 F. Supp. 2d 1156, 1167 (N.D. Cal. 2011); Leatherman Tool Grp., Inc. v. Coast Cutlery Co., 823 F. Supp. 2d 1150, 1158 (D. Or. 2011); Edge Games, Inc. v. Elec. Arts, Inc., 745 F. Supp. 2d 1101, 1117 (N.D. Cal. 2010); Aurora World, Inc. v. Ty Inc., 719 F. Supp. 2d 1115, 1166-69 (C.D. Cal. 2009).

Apart from the presumption, Spectrum also argues that it has presented evidence that establishes irreparable harm. Spectrum argues that the counterfeit product is inferior, and in those instances when it fails to live up to a consumer's expectations, that consumer will blame Spectrum, which will suffer a loses of goodwill. While such a situation may

---

[5] Spectrum cannot be faulted for citing Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 877 (9th Cir. 2009), for this proposition. Therein, the Ninth Circuit noted without reference to recent Supreme Court authority that this presumption applied. However, in addition to the many district court opinions (cited *supra*) that cast doubt on the continuing viability of the presumption of irreparable harm, the Ninth Circuit itself has noted that Marlyn is not binding. Flexible Lifeline Sys., Inc. v. Precision Lift, Inc., 654 F.3d 989, 997 (9th Cir. 2011) ("The panel's summary treatment of the presumption without consideration of the effect of eBay and Winter does not bind this panel or constitute an affirmation of the presumption's continued vitality.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 13-01001-JVS (RNBx) | Date | December 13, 2013 |
| Title | Spectrum Laboratories LLC v. Lahar Mfg Inc et al | | |

indeed establish the likelihood of irreparable harm necessary to be granted an injunction, Spectrum has submitted insufficient evidence regarding the inferiority of the counterfeit product. Regarding the differences in the product, Spectrum's Managing Member says only that "[c]hemical testing on the counterfeit Quick Fix Plus product showed that it has a pH level that is different from genuine Quick Fix Plus, so that the counterfeit does not mimic human urine as effectively as genuine Quick Fix Plus." (Stephens Decl. ¶ 23.) Absent additional evidence, the Court cannot ascertain the significance of the pH level in the counterfeit product.

Accordingly, Spectrum has failed to present evidence of irreparable harm. Absent an established likelihood of irreparable harm, the Court may not enter a preliminary injunction.

C. The Balance of Equities and Public Interest

The balance of equities will never favor a defendant's willful use of another's marks to sell a counterfeit product. Cf. Moroccanoil, Inc. v. Moroccan Gold, LLC, 590 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008) (finding balance of equity in favor of plaintiff where defendant's use of a confusingly similar markwas intentional and undertaken to trade on plaintiff's established goodwill).

By the same token, the public interest will also always weighs in favor of protection of trademarks against intentional infringement.[6] Id.

Nevertheless, in the absence of evidence of irreparable harm, no injunction may issue.

---

[6] In the absence of opposition to the present Motion, and because the Court does not today issue a preliminary injunction, the Court does not further discuss whether this more general public interest is in any way vitiated by a public interest implicated by what the Court discerns as the primary purpose of Spectrum's products (and the counterfeit product). The Court merely notes that before any injunction is issued, further briefing by the moving party and further reflection by the Court may be required on the issue of whether the public interest is advanced when a consumer is assured of the relative quality of Spectrum's product.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 13-01001-JVS (RNBx)                                   Date   December 13, 2013

Title    Spectrum Laboratories LLC v. Lahar Mfg Inc et al

IV.    Conclusion

  Because Spectrum has failed to present evidence of irreparable harm, the Court denies the Motion for Preliminary Injunction.

  **IT IS SO ORDERED.**

|  | 0 | : | 0 |
|---|---|---|---|
| Initials of Preparer | dv | | |