MARC E. HANKIN (SBN: 170505)
E-Mail: Marc@HankinPatentLaw.com
KEVIN SCHRAVEN (SBN: 259446)
E-Mail: Kevin@HankinPatentLaw.com
NIMA DAROUIAN (SBN: 271367)
E-Mail: Nima@HankinPatentLaw.com
**HANKIN PATENT LAW,**
A Professional Corporation
12400 Wilshire Boulevard, Suite 1265
Los Angeles, CA 90025
Telephone: (310) 979-3600
Facsimile: (310) 979-3603

Attorneys for Defendant,
**LAHAR MFG., INC. D/B/A SYNTHETIX5**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPECTRUM LABORATORIES, LLC, <br>     Plaintiff, <br><br> v. <br><br> J.T. SANIYA, INC.; H.M. DISTRIBUTORS, INC.; YASIN JUMANI; DHARM CHADHA, DBA JOHNNY'S TRADING; and DOES 4-5, inclusive, <br>     Defendants. | Case No. SACV13-1001 JVS (RNBx) <br><br> **DEFENDANT LAHAR MFG., INC.'S OPPOSITION TO PLAINTIFF SPECTRUM LABORATORIES, LLC'S MOTION TO SET ASIDE CONSENT JUDGMENT** <br><br> Date: May 19, 2014 <br> Time: 1:30 p.m. <br> Ctrm: 10C <br> Judge: Hon. James V. Selna |

Defendant Lahar Mfg., Inc. d/b/a Synthetix5 ("Synthetix5") opposes Plaintiff Spectrum Laboratories, LLC's ("Spectrum") Motion to Set Aside Consent Judgment ("Motion") as follows:

## I. INTRODUCTION

After Spectrum negotiated and bargained for a Settlement Agreement with Synthetix5, the Court Dismissed all of Spectrum's claims against Synthetix5 *With Prejudice*. Thus, this matter has been fully adjudicated on the merits, and Spectrum is barred from re-opening this litigation by filing its improper Motion.

Spectrum's improper Motion is also procedurally and substantively flawed. First, Spectrum's Counsel completely disregarded Local Rule 7-3 by failing to meet and confer with Synthetix5's Counsel prior to filing this Motion, even though Spectrum's Counsel was well aware of the fact that Synthetix5 was currently being represented by the Undersigned Counsel. Second, Spectrum's Motion relies on Local Rule 7-18, but Spectrum has failed to identify the actual Motion that was purportedly decided improperly by this Court that should be reconsidered (of course, that is because there was no motion). Third, Spectrum's arguments about the quantity of bottles that Synthetix5 has purchased from the manufacturer, Midwest Container, are a red herring and completely misleading because Spectrum does not have a Patent in regards to these bottles and Spectrum does not have the exclusive right to use these bottles. Moreover, Spectrum's counting of the bottles purchased – which have multiple commercially viable non-infringing uses – is not any evidence at all of wrongdoing, fraud, infringement, or counterfeiting.

Spectrum's attempt to re-open a matter that has already been fully adjudicated on the merits violates California Law, Federal Law, and public policy. Synthetix5 therefore respectfully requests that the Court Deny Spectrum's Motion.

## II. FACTS SUPPORT THE COURT'S DENIAL OF THE MOTION

Spectrum and Synthetix5 both provide consumers with synthetic urine products. *See* ECF 45, ¶12; *see also* Declaration ("Decl.") of Michael Tandberg at

¶3. Spectrum offers a product called "Quick Fix Plus", which contains a 3 ounce bottle of synthetic urine, an attached temperature strip, and a heating pad that must be attached to the bottle with tape or a rubber band. *See* Decl. of Michael Tandberg at ¶4, Ex. A. Synthetix5, on the other hand, offers a product called the "Synthetix5 Urine Bottle Kit", which contains a 3.5 ounce bottle of synthetic urine, a temperature strip, and a self-adhesive heating element. Additionally, Synthetix5 offers a product called the "Synthetix5 Belt Kit", which includes a belt. *Id.* at ¶5.

At one point, Synthetix5 also sold products that it believed was Spectrum's "Quick Fix Plus" product. *See* ECF 31. The wholesale purchase and resale of Spectrum's "Quick Fix Plus" product was a minuscule part of Synthetix5's business. *See* Decl. of Michael Tandberg at ¶6.

On July 2, 2013, Spectrum filed a Complaint against Synthetix5 alleging trademark infringement, unfair competition, and deceptive trade practices in regards to some of the "Quick Fix Plus" products that Synthetix5 sold. *See* ECF 1. Spectrum's Complaint against Synthetix5 was amended on July 18, 2013. ECF 14.

Subsequently, the Parties entered into Settlement discussions; mutually negotiated and bargained for the terms of the Settlement Agreement; and executed a Settlement Agreement. *See* Decl. of Michael Tandberg at ¶7. As part of the Settlement Agreement, the Parties negotiated and entered into a Joint Stipulated Request for Entry of Consent Judgment and Permanent Injunction against Synthetix5 on September 11, 2013. *See* ECF 30.

On September 13, 2013, the Court issued its Order as to the Consent Judgment and Permanent Injunction against Synthetix5. *See* ECF 31. The Court did "not find that Synthetix5 knowingly or intentionally distributed counterfeit Spectrum products"; held that the Consent Judgment "resolves all of Spectrum's claims against Synthetix5"; and Ordered that "Spectrum's claims asserted against Synthetix5 in the Action are hereby **dismissed with prejudice** pursuant to Federal Rule of Civil Procedure 41(a)." *Id.* (emphasis added).

### III. ALL OF SPECTRUM'S CLAIMS AGAINST SYNTHETIX5 HAVE BEEN DISMISSED WITH PREJUDICE

"[A] dismissal with prejudice is the equivalent of a final judgment on the merits, barring the entire cause of action." *Boeken v. Philip Morris USA, Inc.*, 230 P.3d 342, 345 (Cal. 2010). "It is well settled that a dismissal with prejudice by consent or stipulation of the parties, after compromise or settlement of the suit where the dismissal is intended to operate as a retraxit and end the litigation, is a bar to a subsequent suit." *Bank of Am. v. Dep't of Mental Hygiene*, 54 Cal. Rptr. 899, 903 (Cal. Ct. App. 1966). "Undoubtedly under this rule it would appear that the litigation is ended not only as to the plaintiff's cause of action but also as to any defense the defendant could have set up; otherwise there would be no 'end to the litigation' which is the object of a dismissal with prejudice." *Id.* "Dismissal with prejudice is determinative of the issues in the action and precludes the dismissing party from litigating those issues again." *Torrey Pines Bank v. Superior Court*, 265 Cal. Rptr. 217, 221 (Cal. Ct. App. 1989).

"A voluntary dismissal 'with prejudice' operates as an adjudication on the merits, barring further action on the same claims in the same court." *See* RUTTER GRP., FED. CIV. PROC. BEFORE TRIAL § 16:379 (2013); *see also Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) ("'[W]ith prejudice' is an acceptable form of shorthand for 'an adjudication upon the merits.'") (citations omitted).

Here, the Court has already issued an Order holding that "Spectrum's claims asserted against Synthetix5 in the Action are hereby dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)." *See* ECF 31. In fact, Spectrum – on its own volition – *stipulated* to the entry of the Consent Judgment and Permanent Injunction against Synthetix5. *See* ECF 30 ("[I]t is hereby stipulated and agreed to by the parties that the Court should enter a Consent Judgment and Permanent Injunction, in the form lodged concurrently herewith,

against Synthetix5.").

The dismissal, with prejudice, of Spectrum's claims against Synthetix5 was "intended to operate as a retraxit and end the litigation[.]" *Bank of Am.*, 54 Cal. Rptr. at 903. Spectrum is thus barred from attempting to re-open its lawsuit against Synthetix5 by filing its Motion because this matter has already been fully adjudicated upon the merits and there is nothing left to litigate. *E.g., Boeken,* 230 P.3d at 345; *see also Semtek*, 531 U.S. at 505.

### IV.   SPECTRUM NEGOTIATED AND BARGAINED FOR THE SETTLEMENT AGREEMENT THAT WAS ENTERED INTO WITH SYNTHETIX5

"It is well recognized that settlement agreements are judicially favored as a matter of sound public policy." *Speed Shore Corp. v. Denda*, 605 F. 2d 469, 473 (9th Cir. 1979). "Settlement agreements conserve judicial time and limit expensive litigation." *Id*. "Settlement agreements 'are highly favored as productive of peace and good will in the community,' as well as 'reducing the expense and persistency of litigation.'" *City of Orange v. San Diego Cnty. Employees Ret. Assn.*, 126 Cal. Rptr. 2d 405, 413 (Cal. Ct. App. 2002) (citations omitted).

It is undisputed that the Parties mutually bargained for the Settlement Agreement that was entered. *See* ECF 30 (the parties "have agreed to settle their present dispute; and . . . the parties' settlement provides for the entry of a Consent Judgment and Permanent Injunction by the Court."); *See also* ECF 31 ("the parties have agreed to resolve their dispute by stipulating to the dismissal of the claims asserted in the Action against Synthetix5 with prejudice by having the Court enter this consent judgment and permanent injunction."). Therefore, Spectrum's attempt to now disregard the fact that it voluntarily chose to enter into the Settlement Agreement with Synthetix5 in September 2013 is unwarranted.

### V.   SPECTRUM'S MOTION HAS VIOLATED THE LOCAL RULES

Spectrum has violated Local Rule 7-3 by filing this Motion, and has

1  misapplied Local Rule 7-18 in its Motion.

2  **A. <u>Local Rule 7-3</u>**

Local Rule 7-3 of the United States District Court for the Central District of California ("Central District of California") states:

> [C]ounsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution. The conference shall take place at least seven (7) days prior to the filing of the motion.

*See* L.R. 7-3.

In the Declaration of Spectrum's Counsel that accompanies Spectrum's Motion, Spectrum's Counsel claims that "[d]uring the week of January 20, 2014, my partner Bruce Reinhart spoke to Synthetix5's attorney, Ben Lila, by phone about the new evidence implicating Synthetic5 and about potentially resolving the issue short of Spectrum moving to vacate the Consent Judgment to bring Synthetix5 back into the case." *See* Declaration of Matthew J. Cavanagh in Support of Motion at ¶16.

However, one short week prior to filing this Motion, Spectrum's Counsel *knew* that Synthetix5 was represented by Hankin Patent Law, APC. Specifically, on April 8, 2014 (seven days before this Motion was filed), Spectrum's Counsel sent a letter to Hankin Patent Law's Managing Partner, Marc E. Hankin, regarding a matter unrelated to Spectrum's Motion, and Spectrum's counsel stated:

> Dear Marc:
>
> Attached are reissued subpoenas to Michael Tandberg and Lahar Mfg., dba Synthetix5, that correctly state the issuing court.
>
> ***I know that you are counsel for Mr. Tandberg and understand that you also represent Mr. Tandberg's business, Lahar Mfg.***
>
> Therefore, this perfects service as to both third-parties.

*See* Decl. of Marc E. Hankin at ¶3, Ex. B (emphasis added).

1  Spectrum's Counsel gave Hankin Patent Law absolutely no Notice
2  whatsoever regarding the filing of the instant Motion. *Id.* at ¶4. Synthetix5's
3  Undersigned Counsel first learned that this Motion was filed by coincidentally
4  reviewing the Court's Docket Report when looking for something else. *Id.* Had
5  Synthetix5's Counsel not happened to have checked the status of this case on the
6  Court's CM/ECF system, Synthetix5 may have been deprived of an opportunity to
7  oppose this Motion, as the Undersigned Counsel never has been served nor
8  provided with a courtesy copy by Spectrum's Counsel, whether before the filing or
9  at any time thereafter.

10  Spectrum's Counsel may nevertheless try to claim that it had served Michael
11  Tandberg, President of Synthetix5, with Spectrum's Motion. *See* Proof of Service
12  accompanying Motion [ECF 54, P. 9]. However, communicating with a
13  represented party violates the Rules of Professional Conduct. *See* Cal. Rules of
14  Prof'l Conduct, Rule 2-100 ("While representing a client, a member shall not
15  communicate directly or indirectly about the subject of the representation with a
16  party the member knows to be represented by another lawyer in the matter, unless
17  the member has the consent of the other lawyer.").

18  There was simply no good faith reason for Spectrum's Counsel to fail to
19  give Notice to Synthetix5's Undersigned Counsel regarding this Motion, especially
20  when Spectrum's Counsel *knew* that Hankin Patent Law represents Sythentix5.

### B. Local Rule 7-18

Local Rule 7-18 of the Central District of California states:

> A motion for reconsideration of the decision on any *motion* may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest

showing of a failure to consider material facts presented to the Court before such decision.

L.R. 7-18 (emphasis added).

As the Central District of California recently reiterated, "Local Rule 7-18 sets forth the bases upon which the Court may reconsider the decision on any motion[.]" *Page v. Stanley*, 2014 U.S. Dist. LEXIS 23040, 2 (C.D. Cal. Feb. 21, 2014) (emphasis added).

While Spectrum's Motion relies on Local Rule 7-18, Spectrum fails to identify which "motion" was previously decided incorrectly by the Court such that it should be reconsidered. *See* Motion, P. 3-4. The reason Spectrum cannot identify any particular motion that was decided is because there was no motion. Specifically, the Parties entered a Joint Stipulated Request for Entry of Consent Judgment and Permanent Injunction, and the Court then issued a Consent Judgment and Permanent Injunction against Sythentix5. *See* ECF 30 and ECF 31.

There was no motion previously decided by this Court – incorrectly or otherwise – and Spectrum's reliance on Local Rule 7-18 is therefore misguided.

## VI. **SPECTRUM HAS NO RIGHT TO PREVENT SYNTHETIX5 FROM PURCHASING BOTTLES FROM A THIRD PARTY VENDOR**

Nowhere in Spectrum's Motion does Spectrum claim to own a Patent in regards to the bottles that Midwest Container sells. *See* Spectrum' Motion. Nor does Spectrum claim to have the exclusive right to use those bottles that Midwest Container sells. *Id.* Thus, Spectrum's argument that "Synthetix5 bought at least 89,000 three-ounce 'MWC' bottles in 2012 and 2013" is an unnecessary red herring. *Id.* at 2.

Synthetix5 purchases bottles from Midwest Container, as well as boxes, heat pads, caps, and other parts from other vendors, for its Synthetix5 kits. *See* Decl. of Michael Tandberg at ¶8. Synthetix5 has sold thousands of its kits, and these kits

include the bottles that Synthetix5 purchased from Midwest Container. *Id.* In fact, Synthetix5 did not even seek out Midwest Container as its bottle supplier; Synthetix5 has been using a broker for the past five (5) years to find and purchase bottles, and Midwest Container was selected because it is a manufacturer that has a satisfactory cost and lead time. *Id.* at ¶9. Simply put, the operation of Synthetix5's business entails procuring and using bottles.

There is nothing in the Motion to Set Aside that is evidence of any wrongdoing, fraud, infringement, or counterfeiting. These are just arguments made by Spectrum's Counsel, based upon facts that have perfectly plausible reasons. Use of the bottles – which Synthetix5 does not dispute – is not evidence of wrongdoing, fraud, infringement, or counterfeiting.

## VII. CONCLUSION

For the reasons detailed above, Synthetix5 respectfully requests that Spectrum's Motion to Set Aside the Consent Judgment be Denied in its entirety.

Dated: April 25, 2014

Respectfully submitted,

**HANKIN PATENT LAW, APC**

/Marc E. Hankin/
_____
Marc E. Hankin, Esq.

Attorneys for Defendant,
**LAHAR MFG., INC.
D/B/A SYNTHETIX5**