Steven Jay Katzman, State Bar No. 132755
skatzman@bmkattorneys.com
Anne Uyeda, State Bar No. 235306
auyeda@bmkattorneys.com
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700/Facsimile (949) 369-3701

Bruce E. Reinhart (admitted *pro hac vice*)
Breinhart@mcdonaldhopkins.com
MCDONALD HOPKINS LLC
505 S. Flagler Drive, Suite 300
West Palm Beach, Florida 33401
Telephone: (561) 472-2970/Facsimile: (561) 472-2122

David B. Cupar (admitted *pro hac vice*)
dcupar@mcdonaldhopkins.com
Matthew J. Cavanagh (admitted *pro hac vice*)
mcavanagh@mcdonaldhopkins.com
MCDONALD HOPKINS LLC
600 Superior Ave., East, Ste. 2100
Cleveland, Ohio 44114
Telephone: (216) 348-5400/Facsimile: (216) 348-5474

Attorneys for Plaintiff
SPECTRUM LABORATORIES, LLC,

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SPECTRUM LABORATORIES, LLC<br><br>     Plaintiff,<br><br>v.<br><br>J.T. SANIYA, INC.; H.M. DISTRIBUTORS, INC.; YASIN JUMANI; DHARM CHADHA, DBA JOHNNY'S TRADING; and DOES 4-5, inclusive,<br><br>     Defendants. | Case No. SACV13-1001 JVS (RNBx)<br><br>**REPLY IN SUPPORT OF MOTION TO SET ASIDE CONSENT JUDGMENT**<br><br>Date:  May 19, 2014<br>Time:  1:30 p.m.<br>Place:  Department 10C<br>            United States District Court<br>            411 W. Fourth Street<br>            Santa Ana, California 92701<br>Judge:  James V. Selna |

1

## I. Introduction

Synthetix5's owner, Michael Tandberg, signed two declarations swearing that he and Synthetix5 did not know that the counterfeit Spectrum Quick Fix products that Synthetix5 had sold to Minnesota retailer Down in the Valley were counterfeit. Tandberg blamed J.T. Saniya, Inc. ("Saniya") for the counterfeiting and swore that Synthetix5 bought all of its Quick Fix (including the counterfeits it sold to Down in the Valley) exclusively from Saniya. Trusting Tandberg's declaration and aiming to conserve judicial resources, Spectrum agreed to dismiss Synthetix5 from the case without the payment of money by consent judgment.

After the Court entered the consent judgment, Spectrum learned that the plastic bottles used in the counterfeit product had been purchased from Midwest Container & Industrial Supply ("Midwest Container"). Spectrum subpoenaed Midwest Container's sales records, and then subpoenaed all of the entities that had purchased bottles from Midwest Container to see to whom they may have resold the bottles. Through that effort, Spectrum learned that – transacting through at least two different middle men – Synthetix5 had purchased 89,000 of the very Midwest Container bottles used in the counterfeiting. Combined with other evidence in this case, Synthetix5's purchases show that Tandberg's declarations were false and that Synthetix5 was involved in the counterfeiting.

Spectrum moved this Court to vacate the consent judgment based on this newly discovered evidence. Unable to defeat Spectrum's motion on the merits, Synthetix5 responds with procedural complaints. Spectrum's motion, however, is procedurally correct and substantively strong. The Court should grant Spectrum's motion accordingly.

## II. Argument in Reply

### A. The Consent Judgment Is Interlocutory

Synthetix5 argues that, because the consent judgment dismissed Synthetix5 "with prejudice," Spectrum is "barred from attempting to re-open its lawsuit against Synthetix5." (Synthetix5's Opposition, ECF # 55, ("Opp.") at 4-5.) According to Synthetix5, when a dismissal is "with prejudice," the Court is powerless to do anything about it, even when the

REPLY IN SUPPORT OF MOTION TO SET ASIDE CONSENT JUDGMENT

dismissal is procured by fraud or based on factual findings contrary to newly discovered evidence. Synthetix5 misunderstands and misapplies the law on final judgments.

Under Rule 54(b), a judgment as to one of multiple defendants "does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Here, the consent judgment did not adjudicate the claims against the other defendant in the case at the time: Saniya. Because the Court has not entered final judgment as to all claims and all parties, the consent judgment is interlocutory and may be vacated "at any time" under Rule 54(b) or Local Rule 7-18. Despite Spectrum citing and relying on Rule 54(b), Synthetix5 ignored that important rule.

Moreover, the newly discovered evidence of Synthetix5's bottle purchases would be more than sufficient grounds to vacate the judgment under Federal Rule of Civil Procedure 60(b) if the judgment were final. *See* Fed. R. Civ. P. 60(b) ("the court may relieve a party . . . from a final judgment . . . for the following reasons: . . . (2) newly discovered evidence . . . (3) fraud . . .").

Spectrum, therefore, is not barred from asking the Court to vacate the consent judgment, and the Court is not barred from doing so.

### B.  Public Policy Disfavors Settlements Obtained By Fraud

Next, Synthetix5 says the Court should deny Spectrum's motion because there is a general public policy favoring settlements. (Opp. at 5.) Public policy, however, does not favor settlements procured by fraud. *See Edwards v. Travelers Ins. of Hartford, Conn.*, 563 F.2d 105, 116 (6th Cir. 1977) ("Fraudulently obtained settlements, however, are obviously not favored . . ."). Therefore, public policy favors granting Spectrum's motion so this dispute can be resolved based on true facts, and to guard against Synthetix5 benefiting from a fraud.

### C.  The Parties Attorneys Did Meet-and-Confer

Synthetix5 wrongly accuses Spectrum of violating its meet-and-confer obligation under Local Rule 7-3. (Opp. at 6-7.) Synthetix5 admits, as it must, that Spectrum did meet-

and-confer with Synthetix5's former attorney, Ben Lila, as attested to in the declaration of Spectrum's counsel that was filed with Spectrum's motion. (*See id.* at 6.) Thus, Spectrum has fully complied with Local Rule 7-3.

According to Synthetix5, when Synthetix5 changed attorneys, Spectrum should have requested another meet-and-confer with the new attorney. Synthetix5's theory has no legal support and is nonsensical. If Synthetix5's new attorney did not know about the newly discovered evidence shared with the former attorney, and if new counsel did not know of Spectrum's intent to move to vacate the consent judgment, then Synthetix5 should complain to its former attorney for not passing along that information. Regardless, Synthetix5's objection is nonsensical because, based on its opposition brief, its new attorney's position is identical to its former attorney's position – both oppose Spectrum's motion.

Similarly, Synthetix5's complaint that its new attorney did not receive notice of Spectrum's motion is meritless. As confirmed by Spectrum's proof of service, Synthetix5's attorney Ben Lila was served by the Clerk's ECF system <u>and</u> by U.S. mail. If Mr. Lila – who was still attorney of record at the time of filing – did not pass word along to Synthetix5 or its new attorney, Synthetix5's issue is with Mr. Lila, not with Spectrum.

### D.  A "Request" Is A "Motion"

Synthetix5 argues that Spectrum cannot seek relief under Local Rule 7-18 because there was no "motion" ruled on by the Court. (Opp. at 7-8.) The Court should reject Synthetix5's false hairsplitting. The parties filed a "Stipulated <u>Request</u> for Entry of Consent Judgment and Permanent Injunction" (ECF # 30) (emphasis added), and the Court granted that "request" when it signed and entered the consent judgment (ECF # 31). That "request" is a "motion" because it is a request for Court action.[1] That the parties labeled their motion as a "request," rather than a "motion," is a distinction without a difference.

///

---

[1] Black's Law Dictionary defines a "motion" as a "written or oral application <u>requesting</u> a court to make a specified ruling or order." Black's Law Dictionary 467 (3d Pocket Ed. 2006) (emphasis added).

Moreover, as explained in Spectrum's motion to vacate the consent judgment, separate from the relief requested under Local Rule 7-18, the Court should vacate under its inherent authority. Thus, the Court should vacate regardless of whether a motion prompted the Court to enter the consent judgment.

### E. Synthetix5's Purchases Are Evidence Of Counterfeiting Involvement

Lastly, Synthetix5 argues that there is nothing unlawful about purchasing bottles from Midwest Container. (Opp. at 8-9.)

In a vacuum, Synthetix5 might be correct. But, when combined with the other evidence in this case, Synthetix5's purchases of the very bottles used in the counterfeiting is damning. It is undisputed that the counterfeiter used Midwest Container bottles to manufacture the counterfeit Quick Fix products. And, importantly, among the other purchasers of Midwest Container bottles, Synthetix5 is the only one which: (i) had admitted to having and selling counterfeit Quick Fix (which it claimed it bought from Saniya); (ii) had purchased the quantity of bottles needed to conduct a counterfeiting operation; (iii) had the means to manufacture the counterfeit synthetic urine liquid (based on its making and selling its own "Synthetix5" synthetic urine product); and (iv) resides in California, where the counterfeiting originated. For example, the only business to buy more Midwest Container bottles than Synthetix5 is Dan's Whetstone – an obviously innocent Arkansas business that uses the bottles to hold honing oil it sells with its sharpening stones.

Synthetix5's admitted purchases, therefore, prove that Synthetix5 is involved in the counterfeiting. Or, at a minimum, this newly discovered evidence casts enough doubt over Tandberg's declaration to justify vacating the consent judgment to allow further discovery on Synthetix5's involvement in the counterfeiting operation. Indeed, if Synthetix5 truly had no involvement in the counterfeiting, then it would have produced evidence with its opposition accounting for its use of the 89,000 Midwest Container bottles that it admits to buying. Not only did it not produce that evidence, but it is actively withholding its bookkeeping records, which Spectrum has subpoenaed, that should show how many bottles

///

Synthetix5 purchased, how many are in inventory, and how many it sold. Its resistance to Spectrum's subpoena is consistent with Synthetix5's guilt, not innocence.

### III. Conclusion

For the foregoing reasons, and for those provided with Spectrum's motion, the Court should set aside the consent judgment.

Dated: May 5, 2014

BIENERT, MILLER & KATZMAN, PLC

By: */s/ Steven Jay Katzman /s/*
    Steven Jay Katzman
    Anne A. Uyeda
    Attorneys for Plaintiff
    SPECTRUM LABORATORIES, LLC

MCDONALD HOPKINS LLC
Bruce E. Reinhart (admitted *pro hac vice*)
David B. Cupar (admitted *pro hac vice*)
Matthew J. Cavanagh (admitted *pro hac vice*)
Attorneys for Plaintiff
SPECTRUM LABORATORIES, LLC

# CERTIFICATE OF SERVICE

I, Coleen Grogan, declare,

That I am a citizen of the United States and am a resident or employed in Orange County, California; that my business address is 903 Calle Amanecer, Suite 350, San Clemente, California 92673; that I am over the age of 18 and not a party to the above-entitled action.

That I am employed by a member of the United States District Court for the Central District of California and at whose direction I caused service of: REPLY IN SUPPORT OF MOTION TO SET ASIDE CONSENT JUDGMENT on the interested parties as follows:

**X** **BY ELECTRONIC MAIL**: by electronically filing the foregoing with the Clerk of the District Court using its ECF System pursuant to the Electronic Case Filing provision of the United States District Court General Order and the E-Government Act of 2002, which electronically notifies said parties in this case:

| | |
|---|---|
| A. Justin Lum<br>ajlum@patentmlaw.com | Marc E. Hankin<br>Marc@HankinPatentLaw.com |
| Kevin Schraven<br>Kevin@HankinPatentLaw.com | Nima Darouian<br>Nima@HankinPatentLaw.com |

**X** **BY U.S. MAIL**  I am "readily familiar" with Bienert, Miller & Katzman, PLC's practice for collecting and processing mail with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business.  As such, I caused to be mailed the foregoing document(s) to the following non-ECF participants in this case:

| | |
|---|---|
| Michael Eric Tandberg<br>President Lahar Mfg, Inc.<br>4533 MacArthur Boulevard, #219<br>Newport Beach, California 92660 | Ben T. Lila, Esq.<br>Mandour & Associates, APC<br>2030 Main Street, Suite 1300<br>Irvine, CA 92614 |

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

This certificate was executed on May 5, 2014, at San Clemente, California.

*/s/ Coleen Grogan /s/*
Coleen Grogan